IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARICK EASTERLING | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF DELAWARE | : | NO. 23-5016 |

MEMORANDUM

Bartle, J.                                                                March 13, 2025

Darick Easterling has sued the County of Delaware, his former employer, for violating the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, et seq. ("PHRA").[1] Following a three-day trial, a jury found that Delaware County wrongfully discriminated against him on the basis of his disability and failed to accommodate his disability. It awarded him one dollar in compensatory damages. Thereafter, the court presided over a bench trial on the issues of back pay and reinstatement or front pay.

I

Plaintiff was born on October 14, 1955 and is sixty-nine years old. He resides in Chester County. On April 6,

---

1. Although the state law claim was not mentioned to the jury, the parties stipulated that the jury's determination as to plaintiff's federal law claim would also control as to his PHRA claim because the two statutes are coextensive, at least for the purposes of liability. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

2022, he began working for Delaware County as a correctional officer at its prison, known as the George W. Hill Correctional Facility. On that date, Delaware County took over the management of its prison from Geo Group Inc., a private company which had previously contracted with the County to do so. The County hired many correctional officers, including plaintiff, who had been employees of Geo Group.

Upon the prison's transition to management by Delaware County, plaintiff requested a reasonable accommodation not to work more than twelve hours consecutively due to his disability. He has spinal stenosis and could not work effectively at one stretch beyond that length of time. Plaintiff was terminated from his position on May 25, 2025 for his failure to work eight hours of mandatory overtime beyond his regular eight-hour shift. The jury, as noted, found that Delaware County discriminated against him and denied him a reasonable accommodation.

The parties stipulated that plaintiff would have received the following hourly rates had he continued as a Correctional Officer with the County. From the date of his termination through August 5, 2023, he would have received $27.87 per hour. Beginning on August 6, 2023 through December 31, 2024, his pay rate would have been $30.87 per hour. On January 1, 2024, the hourly rate increased to $33.27. This rate was in effect through the date of the verdict, February 28,

2025.  In addition to his hourly rate, he would have been paid a $2,000 bonus in 2022 and in 2025 a longevity bonus of $4,500.  According to the relevant collective bargaining agreement, half of this bonus, or $2,250, would have been received in early 2025, prior to the verdict.  The remaining half would have been forthcoming at the end of July 2025.  Plaintiff also participated in the County's pension program as applicable to all other County employees.

       Within two weeks of his termination, plaintiff began searching for a new position.  His wife, who is a Human Resources manager at a manufacturing plant, recommended that he use Indeed, a job recruiting website.  The two regularly monitored the website for postings.  Although they did not specifically search for correctional officer positions, Indeed recommended one such position to plaintiff.  However, as it was a job with Delaware County, he chose for obvious reasons not to pursue that opportunity.

       Additionally, he submitted his information to a temporary staffing agency called PeopleShare.  That agency did not recommend placement at any correctional facility.  It found him a position as an assembly technician in or about July 2022.  In that role, he was employed by PeopleShare but completed only two eight-hour shifts.  He chose not to continue in that

placement because it required him to engage in repetitive movements in the same location for the entirety of his shift.

Shortly thereafter, PeopleShare placed him in a job at Portescap where he was responsible for cleaning rotors and pressing bearings onto them. He had no opportunity for overtime. On January 2, 2023, he was hired by Portescap to continue in his same position. Based on his W-2s, he received a total of $109,935.94 in gross income from these job placements.

He was terminated without just cause from his job at Portescap in February of 2025. He has yet to secure alternative employment due to his preparation for and attendance at the trial in this case. He has continued monitoring Indeed and has returned to PeopleShare. Additionally, he has interviewed for a security position at the Chester County Hospital.

At the bench trial, defendants submitted evidence of multiple openings for correctional officer positions in southeastern Pennsylvania and the state of Delaware. As previously noted, plaintiff lives in Chester County. The majority of the postings are either undated or were posted in 2025. Two of the job opportunities, at prisons in Chester County and Montgomery County, began accepting applications in 2024. Defendant also submitted a September 22, 2022 press release which announces an October 2022 hiring event for

correctional officers for the Montgomery County Correctional Facility.

II

Under 42 U.S.C. § 12117, the ADA incorporates the "powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title . . . ." Those are the remedies applicable under Title VII. Section 2000e-5(g)(1) provides that if

> the court finds that the [defendant] has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). The Pennsylvania Human Relations Act also provides that the court may grant affirmative action such as back pay and reinstatement. 43 Pa. Stat. § 962(c)(3). As an alternative to reinstatement, a court has discretion to award front pay. Squires v. Bonser, 54 F.3d 168, 176 (3d Cir. 1995). Plaintiff has the burden to show the amount of pay he is due with "reasonable certainty." See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC, 880 F.3d 791, 799 (6th Cir.

2018); see also Koch v. Mack Trucks, Inc., Civ. A. No. 16-4857, 2018 WL 2461921, at *5 (E.D. Pa. June 1, 2018).

Awards of both back and front pay are subject to mitigation. See Ford Motor Co. v. EEOC, 458 U.S. 219, 230-32 (1982); see also Blum v. Witco Chem. Corp., 829 F.2d 367, 374 (3d Cir. 1987). Plaintiff must attempt to mitigate past and future lost wages by seeking new employment so as not to obtain a "windfall" or "double recovery." Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1005 (3d Cir. 1988).

The employer has the burden to prove the employee did not make reasonable efforts to mitigate either front or back pay. See id. at 1004-05; see also Roderiguez v. Taylor, 569 F.2d 1231, 1243 (3d Cir. 1977), cert. denied, 436 U.S. 913 (1978). To do so, defendant must show that substantially equivalent positions were available and that plaintiff failed to use reasonable care and diligence in seeking such positions. Wooldridge v. Marlene Indus. Corp., 875 F.2d 540, 548 (6th Cir. 1989). A substantially equivalent position is one that "affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the [plaintiff] has been discriminatorily terminated." Booker v. Taylor Milk Co., Inc., 64 F.3d 860, 866 (3d Cir. 1995) (quoting Sellers v. Delgado Coll., 902 F.2d 1189, 1193 (5th Cir. 1990)) (emphasis added). A plaintiff shows reasonable diligence by

demonstrating a "continuing commitment to be a member of the work force and by remaining ready, willing, and available to accept employment." Id. at 865.

Defendant relies on Booker to support its position that plaintiff failed to seek employment at a "substantially equivalent position." In Booker, plaintiff had been a day laborer prior to his termination. After his termination, he "read the help-wanted ads in the Times" each week and was "active with . . . a local employment agency" but failed to submit any applications in response to newspaper ads. Id. Our Court of Appeals affirmed the district court's determination that plaintiff failed to exercise reasonable diligence. Id. at 866.

Although plaintiff utilized Indeed, the modern equivalent of a newspaper's help-wanted ads, he was far more successful in obtaining employment than the plaintiff in Booker. He began applying for positions two weeks after his termination and was employed at a position within three months. He was hired as a permanent employee at Portescap, which continued to give him regular wage increases. Since his termination from that job in February 2025, he has continued submitting applications and has recently interviewed for a security position at the Chester County Hospital. Plaintiff has been diligent and successful in seeking other employment.

Defendant argues that plaintiff failed to mitigate because he did not seek "substantially equivalent" positions. In Booker, plaintiff had previously been employed as an "unskilled worker who loaded and unloaded trucks and coolers." To establish that plaintiff failed to mitigate, defendant presented numerous postings for a variety of positions for laborers or movers. Plaintiff failed to apply for any of them. The district court found that these job postings were substantially equivalent, and our Court of Appeals affirmed this determination. Id. at 866.

In this case, defendant presented multiple job postings for correctional officers. However, many are recent. Defendant has presented no evidence that any of these roles were available between May 25, 2022 and August of that same year, when he began working at Portescap. Accepting a job as a correctional officer at either prison in Montgomery County or Chester County, both of which had open positions in 2022 and 2024, would not have been substantially equivalent to his prior position. At Delaware County, he would have twenty years of experience and made at least $27.87 per hour. In 2022, Montgomery County prison offered only $21.23 per hour, which increased to $24 by 2024. The Chester County prison, which was hiring in 2024, offered a starting salary of $24.78 per hour. These pay rates are not substantially similar to the wage he was

paid at Delaware County.  More significantly, as of December 4, 2023, plaintiff made $24.84 per hour at Portescap, more than he would have earned at either prison.

Plaintiff adequately mitigated his damages through his work at PeopleShare and then Portescap.  His failure to apply for a position as a correctional officer does not diminish his achievement in promptly finding reasonable alternative employment.

III

The court turns first to the issue of back pay due plaintiff, which "compensates the plaintiff for loss of past wages . . . ."  Blum, 829 F.2d at 373.  Plaintiff is eligible for damages from the date of wrongful termination on May 25, 2022 through the jury verdict on February 28, 2025.  This amounts to 1,011 days, approximately two years and nine months.  While 42 U.S.C. § 2000e-5(g)(1) imposes a two-year limitation on back pay, the PHRA has a three-year limitation.  See 43 Pa. Stat. § 962(c)(3).  Plaintiff may seek an award of back pay for the full period between his termination and the verdict.

Back pay should typically be awarded upon a finding of unlawful discrimination and "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through

past discrimination." Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975). Defendant does not present evidence to suggest that plaintiff is not entitled to back pay.

The court must first determine what plaintiff would have earned had he continued as a correctional officer with Delaware County. At trial, the parties presented calculations based on various assumptions as to how many hours he would have worked absent his wrongful termination. Plaintiff and defendant agree on the following calculations. If plaintiff was not staffed on any overtime shifts while employed at Delaware County, he would have received $176,585.60 between May 25, 2022 and February 28, 2025. Had he worked four hours of overtime per week, the total would have been $202,626.24. Had plaintiff worked twelve hours of overtime per week, he would have been paid $228,448.69. Had he worked twenty such hours each week, he would have earned $274,529.58.

Plaintiff and defendant dispute what amount of overtime, if any, plaintiff is due as part of his award of back pay. Defendant argues that he should not be due any overtime because if Delaware County had accommodated plaintiff, it likely would not have required him to work any mandatory overtime. Plaintiff challenges this conclusion and maintains that he is able to work up to twelve hours consecutively and should be

compensated for twelve or even twenty hours of overtime per week.

In plaintiff's seven weeks as a correctional officer with Delaware County, he worked a total of 32 hours of overtime. This amounts to an average of approximately five hours per week of overtime, but the average includes the two eight-hour overtime shifts he was forced to work but could not do so effectively.

Plaintiff has proven by a preponderance of the evidence that he is due overtime pay in his back pay award. The court finds that four hours of overtime per week is appropriate, as it reflects not only his effective work history at the Delaware County prison but also the amount of hours that plaintiff, because of his medical condition, can actually work at one stretch. This finding is consistent with his physician's statement as to his work limitations. Accordingly, the court finds that plaintiff would have earned $202,626.24 in back pay had he not been terminated from his job as a correctional officer in Delaware County on May 25, 2022.

As noted above, such awards are subject to mitigation. An award of back pay will be reduced by the amount plaintiff could earn with "reasonable diligence" 42 U.S.C. § 2000e-5(g)(1). Plaintiff reasonably mitigated his damages during the period covered by back pay by earning $109,935.94 at other jobs.

Subtracting $109,935.94 from $202,626.24, the court will award plaintiff a total of $92,690.30 in back pay.[2]

Additionally, plaintiff may seek prejudgment interest. Such interest is meant to compensate a plaintiff for the "loss of the use of money that [he] otherwise would have earned had he not been unjustly discharged." Booker, 64 F.3d at 868. There is a "strong presumption" that such interest should be awarded. Id. at 869. The parties agreed that the proper interest rate is 4.08% and that to determine the amount of prejudgment interest the court should multiply the back pay award ($92,690.30) by the interest rate (.0408), divided by the number of days in a year (365 days), multiplied by the number of days since the complaint was filed on December 19, 2023 through the date of the verdict on February 28, 2025 (438 days). Under this formula, plaintiff is entitled to $4,538.12 in prejudgment interest.

IV

Plaintiff aspires to return to work as a correctional officer at the Delaware County prison. Reinstatement is the preferred equitable remedy and "insures that no future losses

---

2. Delaware County agrees that it will in addition make its required contribution to plaintiff's pension for this interval. Pension benefits are an "integral part of an employee's compensation package" and may not be excluded from calculations of back or front pay. See, e.g., Blum, 829 F.2d at 374. Based on this agreement, the court is not including the pension payment in any judgment.

will accrue due to discrimination." Blum, 829 F.2d at 373. Reinstatement, however, should not be granted where special circumstances militate against it, such as when "there is a likelihood of continuing disharmony between the parties . . . ." Donlin v. Philips Lighting N. Am. Corp., 581 F. 3d 73, 86 (3d Cir. 2009).

The court is particularly concerned about the impact if plaintiff were to be reinstated as a correctional officer at the Delaware County prison with his overtime limited to four additional hours at a stretch or with no overtime obligation at all. All other correctional officers are mandated to work a full sixteen hours when directed to do so. Such extra shifts are routine due to the shortage of correctional officers. Accordingly, each hour that plaintiff is unable to work on an eight-hour mandatory overtime shift imposes a reciprocal obligation on another correctional officer to make up for it. Providing plaintiff with an exception after an absence from the prison for almost three years is likely to cause disharmony not only with the other correctional officers but also in the wider prison setting. Such disharmony is to be avoided where possible, particularly at a correctional facility where safety is always an issue and tense and dangerous situations are not infrequent. In addition, the relationship between the union representatives of the correctional officers and the management

of the prison showed signs of strain at this trial.  Due to these special circumstances, the court will exercise its discretion to grant front pay instead of reinstatement.  See, e.g., Nance v. City of Newark, 501 F. App'x 123, 127-28 (3d Cir. 2012).

V

The court must consider a variety of factors in fashioning a front pay amount, which includes life expectancy, salary and benefits at the time of termination, any potential raises, the availability of other work opportunities, the time that it will take plaintiff to become reemployed with reasonable effort, and a discount of the award to net present value.  See McInnis v. Fairfield Cmtys., Inc., 458 F.3d 1129, 1146 (10th Cir 2006); see also Andujar v. General Nutrition Corp., 767 F. App'x 238, 243 (3d Cir. 2019) (citing Quinlan v. Curtiss-Wright Corp., 41 A.3d 739, 749 (N.J. Super. Ct. App. Div. 2012)).

The court may exercise discretion to determine how long of a period plaintiff should be awarded in front pay.  It must be awarded for a "reasonable future period required for the victim to reestablish [his] rightful place in the job market." Donlin, 581 F.3d at 87 (citing Goss v. Exxon Off. Sys. Co., 747 F.2d 885, 889-90 (3d Cir. 1984)).  Plaintiff is currently 69 years old.  The court finds that it is likely he would retire at age 72, that is on October 14, 2027.  Therefore, the court will

award front pay from February 28, 2025, the day of the verdict, through October 14, 2027 - approximately two years and seven months.

As discussed above, the court finds that Delaware County should pay plaintiff as though he worked four hours of overtime each week for the remainder of his career at Delaware County.  Although the parties disagree on the amount of overtime plaintiff is due, they agree that if he worked four hours of overtime from the date of the verdict through until his retirement at 72 years old, he would have earned $217,392.88.

Plaintiff currently is without employment although he continues to seek work.  The court finds that plaintiff with reasonable diligence will be able to mitigate his front pay damages.  Plaintiff, prior to the verdict, made a total of $109,935.94 over two years and nine months (33 months).  The court finds it to be reasonable to mitigate his front pay damages by his monthly average pay subsequent to his termination from Delaware County, $3,331.39, multiplied by the number of months until his anticipated retirement date in 31 months.  This product is $103,273.16.  Accordingly, the court will subtract $103,273.16 from $217,392.88, the amount he would been paid in the future by Delaware County.  The difference constitutes $114,119.72 in front pay.

Plaintiff will receive this money as a lump sum. The court has the discretion to reduce an award of front pay to its present value. See Cole v. Del. Tech. & Cmty. Coll., 459 F. Supp. 2d 296, 310 (D. Del. 2006). The present value of money is the sum of money "that, with compound interest, would amount to a specified sum at a specified future date . . . ." Present Value, Black's Law Dictionary (12th ed. 2024). The parties agree that as of February 28, 2025, the United States Federal Reserve interest rate was 4.08%. The court will apply this percentage to determine present value of plaintiff's front pay. Assuming that the payment would have occurred over two years,[3] the court will award him front pay, discounted to its present value, in the amount of $105,347.96.

VI

In summary, Delaware County shall pay plaintiff $1 in compensatory damages, $92,690.30 in back pay damages, $4,538.12 in prejudgment interest, and $105,347.96 in front pay damages, for a total of $202,577.38. Delaware County, pursuant to its

---

3. The equation for the present value of money is:

$$\text{Present Value} = C_1/(1+r)^n$$

In the above equation, "$C_1$" represents the future value of the money – in this case, $114,119.72. "$r$" represents the rate of return, which the court estimates, with parties' agreement, to be 4.08%. "$n$" represents the number of periods over which the return is expected to happen, by years. See Rajesh Kumar, Perspectives on Value & Valuation, in Valuation: Theories & Concepts 3-46 (2016).

agreement at trial, shall include in its payment the pension contributions it owes under the terms of its pension plan for those periods. Pension benefits are an "integral part of an employee's compensation package" and may not be excluded from calculations of back or front pay. See, e.g., Blum, 829 F.2d at 374.